UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UPPER LAKES TOWING CO.,

    Plaintiff,

v.

ZF PADOVA SPA,

    Defendant.
_____/

File No. 2:08-CV-63

HON. ROBERT HOLMES BELL

# **O P I N I O N**

This is a product liability action brought by Plaintiff Upper Lakes Towing Co. ("Upper Lakes"), a U.S. entity, against Defendant ZF Padova SpA ("ZF"), an Italian entity. Before the Court is a motion by Defendant ZF to dismiss the case for lack of subject matter jurisdiction or, in the alternative, to compel arbitration. (Dkt. No. 52.) The Court heard oral argument on the motion on November 3, 2009. For the reasons that follow, Defendant's motion will be denied.

## **I. Factual Background**

On or about June 30, 2005, Plaintiff Upper Lakes entered into a contract with MaK Americas, Inc. ("MaK") for the purchase of two diesel engines, two generators, and a pitch propeller for Plaintiff's tug-and-barge, the Joseph H. Thompson Jr. (the "MaK Contract"). After the purchase of the equipment, a third party installed the equipment at a shipyard in Pennsylvania. Plaintiff contends that when the propeller was put into use, it started leaking

fluid into the hull of the ship and caused excessive vibration, both of which damaged Plaintiff's vessel. Defendant ZF designed and manufactured the pitch propeller. Plaintiff filed suit on March 3, 2008, alleging (1) negligence in the design and manufacture of the pitch propeller, and/or negligence in providing instructions or warnings regarding the propeller, and (2) strict liability for selling a defective pitch propeller. Plaintiff's complaint alleges admiralty and diversity jurisdiction as the bases for subject matter jurisdiction.

Defendant argues that this case should be dismissed for lack of subject matter jurisdiction because the dispute is subject to mandatory arbitration. The MaK Contract requires that disputes related to the agreement be resolved exclusively through arbitration:

> All disputes arising between both Parties in connection with the present contract shall be settled through friendly consultations between both Parties. In case no agreement can be achieved through consultations, it shall exclusively be submitted to arbitration for settlement under the Rules of Arbitration of the International Chamber of Commerce by three (3) arbitrators appointed in accordance with said rules.

(Dkt. No. 52, Def.'s Mot. to Dismiss, Ex. A, MaK Contract § 17). Defendant is not a party to the MaK Contract. However, MaK entered into a purchase agreement in July 2005 with its affiliate, Caterpiller Motoren GmbH & Co. ("Caterpiller Agreement") that is virtually identical to the MaK Contract, including the arbitration provision. (Ex. B.) MaK also entered into a "basis for consortium agreement" in September 2005 with Caterpiller, under which MaK agreed to be the lead for an "undisclosed consortium" to fulfill the terms of the MaK Contract with Plaintiff ("Consortium Agreement"). (Ex. D.) Defendant contends that Caterpiller "passed on" or assigned to Defendant the part of the Consortium Agreement

2

related to the pitch propeller by a "transfer of order" dated October 6, 2005. (Ex. E.) To summarize, Plaintiff entered into a purchase agreement with MaK (the MaK Contract), MaK entered into a purchase agreement and consortium agreement with Caterpiller, and Caterpiller passed on its obligations with respect to the pitch propeller to Defendant.

## II. Analysis

Arbitration agreements are regulated by the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq*. The FAA provides that, for any suit that is referable to arbitration, the Court will stay proceedings while the matter is resolved. 9 U.S.C. § 3. However, the parties agree that the MaK Contract also falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), ratified at 9 U.S.C. § 202 *et seq*. Generally, the Convention applies to arbitration agreements between citizens of the United States and citizens of other countries. *Id*. Where such an agreement requires arbitration, the Court has the power to refer it to arbitration. 9 U.S.C. § 206. As between the FAA and the Convention, the Convention takes precedence and the FAA applies to the extent that it does not conflict with the terms of the Convention. *See* 9 U.S.C. § 208 ("Chapter 1 [of Title 9, the FAA] applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States.").

In evaluating a motion to compel arbitration, the first step is to determine whether the dispute is arbitrable, "'meaning that a valid agreement to arbitrate exists between the parties

and that the specific dispute falls within the substantive scope of the agreement.'" *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 502 (6th Cir. 2007) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). In the instant case, the issue is whether the scope of the arbitration provision in the MaK Contract includes a dispute between Plaintiff and a non- party to the agreement. Arbitration language is to be interpreted "in light of the strong federal policy favoring arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." *Id.* at 503. However, a party cannot be compelled to arbitrate a dispute which it has not agreed to submit to arbitration. *Id.* at 504.

> While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.

*EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (citations omitted).

The arbitration provision in the MaK Contract is limited to "disputes arising *between both Parties* . . . ." (MaK Contract § 17) (emphasis added). It does not say "all disputes" without qualification or even "all disputes arising in connection with the contract." "Courts have consistently drawn a distinction between arbitration clauses specifically identifying the parties to which it applies, and a broader form of arbitration clause which does not restrict the parties." *In re Southwind Shipping Co.*, 709 F. Supp. 79, 82 (S.D.N.Y. 1989); *see In re Continental UK Ltd. v. Anagel Confidence Compania Naviera, S.A.*, 658 F. Supp. 809, 810 (S.D.N.Y. 1987) (denying a motion to compel arbitration by a non-signatory cargo owner and holder of bill of lading in a dispute with a non-signatory vessel owner where the provision

4

applied to disputes between "owners" and "charterers"); *Parkway Dodge, Inc. v. Yarbrough*, 779 So.2d 1205, 1209-10 (Ala. 2000) (preventing a non-signatory manufacturer from enforcing an arbitration provision that applied to disputes between "dealer" and "purchaser"). The arbitration provision in the MaK Contract is not the "broader form" of arbitration clause. The Court notes that the MaK Contract abounds with references to "Vendor" (MaK) and "Buyer" (Plaintiff). The arbitration provision itself is limited to disputes between the "Parties," which is expressly defined in the agreement as the combination of "Buyer" and "Vendor." Defendant is not a "party" to the MaK Contract in the generic sense, nor is it a "Party" as that term is defined in the agreement. Accordingly, the plain text of the agreement indicates that disputes between Plaintiff and Defendant are not included within the scope of the arbitration clause. The Court must enforce the agreement according to its plain meaning.[1] *See EEOC*, 534 U.S. at 294.

Defendant cites cases in which courts appear to have allowed an arbitration agreement to be enforced by or against a non-signatory even though that agreement was limited by its terms to disputes between the parties to the agreement. *See Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) (examining arbitration provision governing disputes that "both parties" or "the parties" cannot resolve); *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (examining arbitration provision governing

---

[1] The MaK Contract contains a choice-of-law provision indicating that the agreement is governed by the laws of Switzerland. (MaK Contract § 17.) However, neither party cites Swiss law on this issue or asserts that Swiss law would require a different interpretation of the arbitration clause.

disputes between "you" and "us"). However, in both of the foregoing cases, the non-signatories stood in the shoes of the original parties to the agreement, either as successors in interest or by assumption. *See Shaw Group*, 322 F.3d at 120 n.2 (noting that the non-signatory succeeded to the rights and obligations of the signatory); *Contec Corp.*, 398 F.3d at 207 (noting that one signatory changed its name and the other signatory changed its corporate form without altering its ownership or its business relationship with the other signatory). Defendant argues that it can enforce the arbitration provision because it stands in the shoes of MaK, but this argument is unsupported. Defendant contends that the obligations of MaK with respect to the MaK Contract were "passed on" or assigned to ZF by virtue of the Consortium Agreement between MaK and Caterpiller and the transfer order between Caterpiller and Defendant. However, even if MaK delegated to Defendant certain *obligations* under the MaK Contract, there is no indication that Defendant assumed any of MaK's *rights* under that agreement, such as the right to enforce the arbitration clause.

Defendant also argues that, even if the MaK Contract does not include Defendant as a party, the contract references Defendant[2] and contemplates Defendant as a third-party beneficiary of the agreement. Defendant argues that because Plaintiff was aware that Defendant would be supplying parts pursuant to the MaK Contract, Plaintiff should be required to arbitrate a dispute with Defendant that is arguably related to that contract. However, this argument cuts against Defendant. The fact that the parties to the MaK

---

[2]The specifications attached to and incorporated as part of the agreement refer to "ZF Marine Propulsion Systems." (MaK Contract, App'x 1 § 19.1.4.)

Contract were aware of Defendant's role when they entered into the agreement suggests that the arbitration provision, as drafted, was intended to exclude Defendant. Rather than agree to a provision applying broadly to *all* disputes arising in connection with the agreement, including disputes involving the members of MaK's consortium or disputes involving the manufacturer or original supplier of the purchased parts, the parties to the MaK Contract agreed to an arbitration clause that is expressly limited to disputes between the "Buyer" and the "Vendor." To allow Defendant to enforce this provision against Plaintiff would be inconsistent with the plain meaning of the text and would "override the clear intent of the parties[.]" *EEOC*, 534 U.S. at 294. For the foregoing reasons, therefore, the Court concludes that the arbitration provision is limited to disputes between Plaintiff and MaK; it does not cover the instant dispute between Plaintiff and Defendant.

Defendant raises two additional arguments in its reply brief. (Dkt. No. 61.) First, it argues that, because the arbitration provision in the MaK Contract references the Rules of Arbitration of the International Chamber of Commerce, the parties to the MaK Contract agreed to have issues regarding the arbitrability of disputes referred to an arbitrator, citing *Apollo Computer, Inc. v. Berg*, 886 F.2d. 469, 473 (1st Cir. 1989) ("By contracting to have all disputes resolved according to the Rules of the ICC . . . Apollo agreed to be bound by Articles 8.3 and 8.4. These provisions clearly and unmistakably allow the arbitrator to determine her own jurisdiction when, as here, there exists a *prima facie* agreement to arbitrate whose continued existence and validity is being questioned."). Defendant's

7

argument is not persuasive. At issue in *Apollo Computer* was whether the non-signatory could enforce an arbitration clause in an agreement that had terminated and that, according to the signatory, had been invalidly assigned to the non-signatory seeking to enforce it. *Id.* at 472. The court held that this issue should be decided by the ICC arbitrator rather than the court. *Id.* Unlike *Apollo Computer*, however, Defendant has not shown that it was assigned any rights under the MaK Contract. Thus, Defendant has not made a prima facie showing that there exists an agreement between Plaintiff and Defendant to arbitrate this dispute. Moreover, the arbitration provision at issue in *Apollo Computer* was a broad form of provision covering all disputes related to the contract; it was not limited to disputes between the parties the agreement. *Id.* at 474. Thus, when the arbitration provision in the MaK Contract is read in its entirety, it does not "clearly and unmistakably" evince an intent to refer to an arbitrator the issue of whether it applies to a dispute between Plaintiff and a non-party to the agreement. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").

Finally, Defendant suggests that the Consortium Agreement requires Plaintiff to arbitrate this dispute. Though Plaintiff is not a party to that agreement, Defendant contends that Plaintiff should be estopped from refusing to arbitrate, citing *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411 (4th Cir. 2000). In that case, the court noted that a non-signatory could be estopped from refusing to comply with an

agreement to arbitrate where it received a "direct benefit" from the contract or where it has "consistently maintained that other provisions of the same contract should be enforced to benefit him." *Id.* at 418. The non-signatory plaintiff in *International Paper* alleged that the defendant failed to honor the warranties in the agreement, and the court determined that the plaintiff should be estopped from refusing to arbitrate because the plaintiff's "entire case hinge[d]" on its asserted rights under that contract. *Id.* In contrast to *International Paper*, there is no indication that Plaintiff relies on or seeks to enforce any asserted rights in the Consortium Agreement. The complaint does not reference the Consortium Agreement and there is no indication that Plaintiff's product-liability claims hinge on any rights in that agreement. Thus, Defendant has not shown that Plaintiff should be estopped from refusing to arbitrate under the Consortium Agreement.

For the foregoing reasons, therefore, Defendant has not shown that this matter should be dismissed or referred to arbitration.

### III. Conclusion

Because the arbitration provision in the MaK Contract is, by its own terms, limited to disputes between the parties to that agreement, and because Defendant has not shown that it has a right to compel Plaintiff to arbitrate under any other agreement, the Court will deny Defendant's motion. The Court is not unreceptive to Defendant's concern that Plaintiff filed a product-liability action against Defendant which may be better suited as an action against MaK for breach of the MaK Contract. Nevertheless, Plaintiff is the master of its complaint

9

with respect to the claims pleaded and the parties sued. By its own admission, Plaintiff has "limited its claims against ZF to those arising outside the bounds of its contract with MaK." (Dkt. No. 53, Pl.'s Resp. in Opp'n to Mot. to Dismiss 17.) The Court has not been asked to review the merits of Plaintiff's claims against Defendant. If those claims are insufficient under the facts of this case, Plaintiff must live with the consequences of its choices, just as Defendant must live with the consequences of its choice of contractual rights and remedies for this type of dispute. Unfortunately (for Defendant), it appears that those rights do not include the right to compel Plaintiff to arbitrate this dispute.

An order will be entered that is consistent with this opinion.


Dated: December 4, 2009                    /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE